IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

**CALVIN LOUIS ROOT, III, #18712**

    Plaintiff.

vs.                                                               CASE NO. 1:03CV30-SPM/AK

**JOHNNY SMITH, et al,**

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this cause of action pursuant to 42 U.S.C. §1983 alleging that after he was arrested and held at the Levy County Jail he was subject to a policy established by Defendant Johnny Smith of segregating sex offenders in a dorm with no light or fresh air, and Defendants Sheffield, Morgan and Seckel told general population that Plaintiff was a sex offender, which resulted in his being severely beaten.  (Doc. 22). Plaintiff also alleges that Defendant Riess denied him access to the law library and tampered with his legal mail.  (Doc. 22).  Defendants have filed a special report (doc. 46), which has been construed as a motion for summary judgment (doc. 47), and Plaintiff, although informed of his obligations in responding to such a motion and being granted additional time to so respond, has filed no response.

**I.    Standard of Review**

On a motion for summary judgment Defendant has the burden to demonstrate an absence of evidence to support the nonmoving party's case.  Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986).  If he

does so, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial.  *Id.*  Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient.  There must be such evidence that a jury could reasonably return a verdict for the party bearing the burden of proof.  Anderson v. Liberty Lobby, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986).  However, "the evidence and inferences drawn from the evidence are viewed in the light most favorable to the nonmoving party, and all reasonable doubts are resolved in his favor." WSB-TV v. Lee, 842 F.2d 1266, 1270 (11th Cir. 1988).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

II.     **Defendants Rule 56(e) evidence**

    a)     Affidavit of Johnny Smith

Sheriff Smith attests that he has no personal recollection of Plaintiff nor does he

recall being aware of any problems encountered by Plaintiff during his stay at the Levy County Jail. (Doc. 46, Attachment 1). Sheriff Smith also attests that the decision to segregate sex offenders at the jail was made in response to a large number of inmates charged with sexual offenses being held at the time and for their safety as well as the safety of others it was determined to segregate them at night when there were fewer correctional officers on duty. During daylight hours, these inmates were allowed to mingle with general population and were able to participate in all activities just as the general population.

      b)    <u>Affidavit of Michael Sheffield</u>

Defendant Sheffield was a Lieutenant and Chief of Security at Levy County Jail during the time at issue, and currently holds the rank of Captain with the Levy County Sheriff's Office. (Doc. 46, Attachment 2). Sheffield has "some recollection" of Plaintiff, but had no personal involvement in his classification. Sheffield recalls that in 2002 a decision was made to house inmates with sexual offenses separately in Dorm 121 because there was such a large number of them at the time. The decision was made to segregate them at night only, when the staff was short, but during the day they were allowed to mingle with general population. Sheffield attests that Dorm 121 has small rectangular window panes, which had been broken by inmates in the past, and metal was placed on the outside for protection. The area was otherwise ventilated by air conditioning. The windows were never able to be opened.

      c)    <u>Affidavit of Mark Morgan</u>

Defendant Morgan attests that he is a correctional officer with the Levy County

Jail. He has no personal recollection of Plaintiff nor does he recall any problems encountered by Plaintiff during his stay at the jail. Defendant Morgan is not involved in any policy making decisions, but carried out the policy set forth in 2002 of segregating sexual offenders in Dorm 121 at night only. Otherwise, these inmates were allowed to mingle with the general population and engage in similar activities.

    d)    <u>Affidavit of Richard Riess</u>

Defendant Riess attests that during the time in question he was a corporal overseeing inmate mail, property and recreation. (Doc. 46, Attachment 4). He does not recall Plaintiff personally nor does he recall any particular problems encountered by Plaintiff while he was at the jail. His practice with regard to legal mail is that the inmate is always allowed to open the mail in front of a correctional officer. A correctional officer may inspect the mail for contraband, but does not read it. The inmate signs a log indicating that he has received legal mail. It would not be likely that Plaintiff's mail would be opened in the mail room, and Reiss has no personal knowledge of that happening. The Levy County Jail has all the law books in its library required by the Florida Model Jail Standards, and Reiss attached that list to his affidavit. Inmates may request other books, even from outside sources. Inmates have daily access to the law library and can go mornings Monday, Wednesday and Friday or afternoons on Tuesday and Thursday. Reiss has no recollection of Plaintiff ever being denied access to the library.

    e)    <u>Affidavit of Eric Seckel</u>

Defendant Seckel is a classification officer at the Levy County Jail. He has no personal recollection of Plaintiff, any problems with Plaintiff, or any grievances filed by

Plaintiff. However, Seckel attests that if he had gotten any grievances from Plaintiff he would have handled them to the best of his ability.

**III. Analysis**

    a) <u>Failure to allege physical injury</u>

Defendants argue that Plaintiff has alleged only mental anguish and is therefore barred from pursuing damages under 42 U.S.C. § 1997e(e), which provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury. However, Plaintiff alleges that he was physically attacked as a result of general population knowing he was a sex offender, and this attack resulted in permanent, physical scarring. (Doc. 22, p. 7). Thus, this ground for dismissal is not well taken.

    b) <u>Failure to Protect</u>

Defendants do not address Plaintiff's claims in terms of a failure to protect, rather their argument is based on a failure to state a claim based on verbal abuse and public embarrassment. (Doc. 46, p. 5-6). The Court does not interpret Plaintiff's claims in this manner, especially since the Court had already advised Plaintiff that such claims were not viable when it ordered him to file a second amended complaint. (Doc. 20).

Plaintiff alleges in his second amended complaint that the Defendants' policy of segregation and their comments regarding the charges against him resulted in his being attacked by other inmates.

"Technically, a pretrial detainee is not protected by the Eighth Amendment's prohibition against cruel and unusual punishment because that amendment applies only

to post-trial convicts." Vinson v. Clarke County, 10 F.Supp.2d 1282, 1293 (S.D. Ala. 1998), citing Belcher v. City of Foley, 30 F.3d 1390 (11th Cir.1994). Analysis proceeds under the Fourteenth Amendment which provides similar protection. See Graham v. Connor, 490 U.S. 386, 396 n. 10, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989); Ancata v. Prison Health Services, Inc., 769 F.2d 700, 703 (11th Cir. 1985). The minimum standard under the Due Process Clause is the same as the Eighth Amendment's standard for convicted prisoners. Belcher v. City of Foley, 30 F.3d 1390, 1396 (11th Cir. 1994); Hamm v. DeKalb County, 774 F.2d 1567, 1574 (11th Cir. 1985); Ludlam v. Coffee County, 993 F. Supp. 1421, 1424 (M.D. Ala. 1998).

The Eighth Amendment "imposes upon prison officials the duty to 'provide humane conditions of confinement.'" Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994), quoted in Jensen v. Clarke, 73 F.3d 808, 810 (8th Cir. 1996). The Amendment requires officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer, 511 U.S. at 832, 114 S. Ct. at 1976, quoting Hudson v. Palmer, 468 U.S. 517, 526- 527, 104 S. Ct. 3194, 3200, 82 L. Ed. 2d 393 (1984). In guaranteeing their safety, officials must "protect prisoners from violence at the hands of other prisoners." Farmer, 511 U.S. at 833, 114 S. Ct. at 1976-1977, citing Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir.), cert. denied 488 U.S. 823 (1988). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.' " Farmer, 511 U.S. at 834, 114 S. Ct. at 1977. "[A]llowing the beating or rape of one prisoner by another serves no 'legitimate penological objectiv[e]." 511 U.S. at 833, 114 S. Ct. at

1977, *quoting* Hudson, 468 U.S. at 548, 104 S. Ct. at 3211.

To prevail on an Eighth Amendment "failure to prevent harm" claim, an inmate must make two showings. First, he must demonstrate "that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834, 114 S. Ct. at 1977, *citing* Helling v. McKinney, 509 U.S. 25, 35, 113 S. Ct. 2475, 2481, 125 L. Ed. 2d 22 (1993). Second, he must show that the defendant prison official had a "culpable state of mind" in that he knew of and disregarded "an excessive risk to inmate health or safety." 511 U.S. at 834 and 837, 114 S. Ct. at 1977 and 1979. In other words, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.,* at 837, 114 S. Ct. at 1979; *see also* Jensen, 73 F.3d at 810; Riddle v. Mondragon, 83 F.3d 1197, 1204 (10th Cir. 1996).

Negligence, or a lack of due care under the circumstances, is insufficient to show a violation of the constitution. Davidson v. Cannon, 474 U.S. 344, 347, 106 S. Ct. 668, 671, 88 L. Ed. 2d 77 (1986). Proof of deliberate indifference is required and entails something more than negligence, but is satisfied by something less than actions undertaken with an intent to cause harm. Farmer, 511 U.S. at 835-36, 114 S. Ct. at 1978. A prison official or jailor, when faced with the knowledge of a substantial risk of serious harm to a prisoner, must take "reasonable measures to abate it" or his inaction will constitute deliberate indifference to that risk. *Id.* at 847.

None of the Defendants recall any particular incident with Plaintiff. Plaintiff has offered copies of several grievances attached to his complaint, several of which address this issue.

*Case No: 1:03CV32*

One grievance dated July 6, 2002, advises Capt. Johnson and Lt. Sheffield that: "I have been here since the middle of February and other than one man punching me in the mouth I've had no problems and have been able to keep my charges to myself." Plaintiff then complains that other inmates are talking about Dorm 121 housing child molesters, and he wants to know if he has privacy rights protected by the Jimmy Ryce Act. There is no response noted on this form.

A grievance dated June 27, 2003, to Lt. Sheffield, describes an incident with Inmate Marr, who began calling Plaintiff names and then pushed himself into Plaintiff's chest. The response was, "This situation will be dealt with."

In a grievance dated July 1, 2003, to Officer Seckel, Plaintiff complains that he wanted to press charges against Inmate Johnson for what he alleges was another assault related to his sexual offenses. He complains that he was not allowed to press charges against Johnson, and then he was assaulted by Inmate Marr. The response was that no one knew about the incident with Inmate Johnson, but another incident involving Plaintiff's brother in law had been turned over to investigation. The response also advised Plaintiff that if he wanted charges filed he must take that up with the state attorneys office, which was the proper way to file charges.

In another grievance dated July 7, 2003, to Lt. Sheffield, Plaintiff complains that Marr was let out of lock down after only ten days, and he felt like more punishment was deserved. Sheffield's response was, "The DR chairperson felt that his punishment was appropriate. He was only written up for disorderly conduct."

Plaintiff has offered no evidence showing that the Defendants were telling other inmates that Plaintiff was a sex offender or evidence to support his claim that he was

*Case No: 1:03CV32*

physically assaulted leaving permanent scarring.  Plaintiff was advised by the Court in an Order dated December 3, 2004, that if he wanted affidavits from other inmates as he had indicated he did he should supply the Court with their names and as much information as he could collect so that their affidavits could be obtained.  (Doc. 49).  Plaintiff did not respond to this Order or otherwise seek any discovery assistance from the Court.

Based on the information provided with Plaintiff's complaint, he had two encounters with other inmates, who allegedly threatened him about his sexual offenses and one of them pushed him in the chest.  This sufficiently describes a serious risk of harm, even though the "injury" described by Plaintiff (being pushed in the chest), is certainly not the permanent and scarring injury he described in his complaint.  However, as soon as Plaintiff told Defendant Sheffield about the incident, action was taken and Inmate Marr was placed in lockdown.   Thus, Defendants actions do not constitute deliberate indifference, and there is no merit to this claim.

  b)  <u>Equal Protection</u>

Plaintiff complains that the segregation of sex offenders in Dorm 121 violated his equal protection rights.  Defendants have provided their affidavits in support of their contention that the measure was decided as a safety measure because at night there were fewer corrections officers on duty.  Defendants further contend that these type offenders were segregated only at night, and otherwise were treated like general population.  Plaintiff himself concedes that during the day he was treated like the rest of the population, and seemingly complains about being "lumped" with the other inmates, who ridiculed him.  (Doc. 22, Attach. ¶ 6).  Plaintiff's primary allegations of unequal

treatment appear to be that his dorm at night had no fresh air or sunlight because the windows were blocked by metal.

The Equal Protection Clause does not require absolute equality. Ross v. Moffitt, 417 U.S. 600, 612 (1974).  Government action may have a disparate impact upon persons similarly situated, but it is not unconstitutional absent a discriminatory intent. Washington v. Davis, 426 U.S. 229, 239 (1976); Personnel Administrator of Massachusetts v. Feeney, 442 U.S. 256, 272 (1979).  Thus, to prevail on an equal protection claim, a prisoner must demonstrate that he is similarly situated to other inmates who were treated more favorably, and that his discriminatory treatment was based on some constitutionally protected interest.  Jones v. Ray, 279 f.3d 944, 947 (11th Cir. 2001).  Plaintiff must set forth facts which show that Defendant discriminated against him on the basis of "race, religion, national origin, poverty or some other constitutionally protected interest." Damiano v. Florida Parole and Probation Comm., 785 F.2d 929, 932-33 (11th Cir. 1986).

Defendants have adequately explained a non-discriminatory basis for the difference in treatment of sexual offenders at night that is wholly unrelated to "race, religion, national origin, poverty, or some other constitutionally protected interest."  The jail staff was decreased at night and the jail at that time was experiencing an inordinate number of sexual offenders, which it deemed to be a risk to others or themselves.  The solution for the jail was to segregate and lock down all sexual offenders in one area, but did this only at night when the staff was short.  Plaintiff's only complaint about this separation in an equal protection context is that his dorm did not have fresh air and sunlight, but he has not shown or even alleged that general population was allowed to

open their windows at night or otherwise had better conditions than his dorm did. Obviously, since Plaintiff was only confined to this dorm at night, the sunlight issue is not well taken. Further, the jail conceded that several of the windows were covered in metal because they had been broken, but even if they were not covered they could not be opened. Defendants also attest that there was ventilation and air conditioning. There is no merit to this claim.

      c)    <u>Access to the Law Library</u>

Plaintiff has offered no proof that lack of access to the law library impeded his efforts to pursue a non-frivolous legal claim. See <u>Lewis v. Casey</u>, 518 U.S. 343, 116 S. Ct. 2174, 2180, 135 L. Ed. 2d 606 (1996).

In <u>Lewis</u>, the Court announced the following three-part test for determining whether a denial of access to the courts has, in fact, caused actual injury under the Constitution:

> 1. The action must involve an attack to the prisoner's sentence, directly or collaterally, or challenge the conditions of his confinement.
>
> 2. The prisoner must show the claim to which he was impeded was not frivolous.
>
> 3. The conduct complained of must have impeded the inmate's capability to file the non-frivolous action challenging his sentence or the conditions of his confinement.

*Id.* at 1281-83.

The legal claim must be an appeal from a conviction for which the inmate was incarcerated, a habeas petition, or a civil rights action." <u>Bass v. Singletary</u>, 143 F.3d 1442, 1445 (11th Cir. 1998), *citing* <u>Lewis</u>, 518 U.S. at 352-57, 116 S. Ct. at 2181-82.

Defendant Riess recalls nothing in particular about Plaintiff and his library needs.

*Case No: 1:03CV32*

Although Plaintiff contends in his complaint that he was without counsel and facing criminal charges, he has offered no proof of this, and the grievances he has provided indicate only that he was unable to locate a 2003 Civil and Criminal Procedure book, which the jail told him was not on their list of required books, but suggested that his attorney could get it for him. A later grievance response indicated that the book was in the library.

Defendant Riess also described the library policy and procedure which was considerably accommodating. Plaintiff could go to the library mornings or afternoons five days a week.

Regardless, Plaintiff has offered no proof that, even if he was denied access to the law library or never received the book he requested in his grievances, this lack of access resulted in any type of defaulted procedure relating to his criminal charges.

d) <u>Legal Mail</u>

Plaintiff complains that his legal mail was opened outside of his presence, but has provided no proof that he grieved this claim with the jail. None of the grievances attached to his complaint raise this issue. Section 1997e(a) provides that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement is mandatory, and may not be waived. <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1326 (11th Cir. 1998). Consequently, this claim, too, must fail.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's motion for summary judgment (doc. 46) be **GRANTED**, and that Plaintiff's amended

complaint, doc. 22, be **DISMISSED** for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997(e) and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2), and that the order adopting this report and recommendation direct the clerk of court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**IN CHAMBERS** at Gainesville, Florida, this __**11th**__ day of April, 2005.

s/ A. KORNBLUM
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**